IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Verna L. Johnson, Administrator of the Estate of Rex Johnson, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| -vs- | ) ) | No. 15 CV 741 |
| Sheriff of Cook County, Cook County, Illinois, Quintoria Dunmars, and Dr. Fayez Mekhael, | ) ) ) ) | *(Judge Guzman)* |
| *Defendants.* | ) | |

**AMENDED COMPLAINT**

Pursuant to order of Court, plaintiff files this amended complaint and, by counsel, alleges as follows:

1.      This is a civil action arising under 42 U.S.C. §1983. The jurisdiction of this Court is conferred by 28 U.S.C. §1343.

2.      Plaintiff Verna L. Johnson is the Administrator of the Estate of Rex Johnson.

3.      Defendant Sheriff of Cook County is sued in his official capacity only.

4.      Defendants Cook County and the Sheriff of Cook County are responsible for the medical needs of detainees at the Cook County Jail.

5. Defendant Quintoria Dunmars was at all times relevant employed as a nurse at the Cook County Jail. Plaintiff sues Dunmars in her individual capacity.

6. Defendant Dr. Fayez Mekhael was at all times relevant employed as a physician at the Cook County Jail. Plaintiff sues Mekhael in his individual capacity.

7. Plaintiff's decedent was detained at the Cook County Jail from August 2, 2008 to September 12, 2008.

8. On or about August 6, 2008, medical personnel at the Jail memorialized in medical records maintained at the Jail their decision that plaintiff's decedent should continue to receive a variety of prescription medications for serious medical needs, including hypertension and seizure disorder.

9. Plaintiff's decedent was detained at the Cook County Jail from October 18, 2009 to November 6, 2009.

10. On or about October 21, 2009, medical personnel at the Jail memorialized in medical records maintained at the Jail their decision that plaintiff's decedent should continue to receive a variety of prescription medications for serious medical needs, including hypertension and seizure disorder.

11.     Plaintiff's decedent was again detained at the Cook County Jail from August 2, 2013 to August 22, 2013.

12.     On or about August 3, 2013, medical personnel at the Jail again memorialized in medical records maintained at the Jail their decision that plaintiff's decedent should continue to receive prescription medication for his serious medical needs, including hypertension and seizure disorder.

13.     Plaintiff's decedent was again detained at the Cook County Jail on November 14, 2013. As set out below with greater specificity, plaintiff's decedent did not receive medication for his seizure disorder and died on November 18, 2013 as a result thereof.

14.     Plaintiff's decedent was subjected to intake medical screening at the Jail by employees of defendant Cook County in connection with his admission to the Jail on November 14, 2013.

15.     The intake screening was performed at about 9:06 p.m. on November 14, 2013 by a "correctional medical technician" employed at the Cook County Jail.

16.     The "correctional medical technician" referred plaintiff's decedent for a secondary medical assessment.

17. A secondary medical assessment was performed at 12:28 a.m. on November 15, 2013 by an "emergency response technician" employed at the Cook County Jail.

18. The "emergency response technician" determined that plaintiff's decedent had a medical history that included seizures.

19. The medical history of plaintiff's decedent, which was available to medical personnel at the Cook County Jail on November 15, 2013, showed that plaintiff's decedent required and had received seizure medication during previous incarcerations at the Jail.

20. Following the secondary medical assessment by the "emergency response technician," plaintiff's decedent was seen by Defendant Mekhael.

21. Defendant Mekhael examined in the early hours of November 15, 2013 the medical records maintained at the Jail for plaintiff's decedent.

22. The medical records examined by defendant Mekhael showed that plaintiff's decedent had received seizure medication on previous incarcerations at the Jail, including one as recently as August of 2013.

23. Defendant Mekhael turned a blind eye to the need of plaintiff's decedent to continue to receive seizure medication; defendant Mekhael

-4-

failed to prescribe any medication for plaintiff's decedent that could have controlled his seizure disorder.

24.     At all times from November 14, 2013 until the death of plaintiff's decedent on November 18, 2013, medical personnel at the Jail ignored the serious medical needs of plaintiff's decedent, refused to consult the medical records referred to in paragraphs 8, 10, and 12 above, and failed to provide plaintiff's decedent with the prescription medication he required to avoid death.

25.     The failure of medical personnel to undertake the acts described in the preceding paragraph was the result of a widespread practice of deliberate indifference on the part of defendant Sheriff and Cook County:

      a. In 2008, the United States Department of Justice informed the Sheriff and Cook about serious flaws in the intake medical screening at the Cook County Jail. Thereafter, the DOJ entered into a consent decree with defendants Cook County and Sheriff in which those defendants agreed to make various changes to cure the flaws in intake screening.

      b. Among the changes defendants Cook County and Sheriff agreed to make to intake screening was to require that intake

screening performed by "correctional medical technicians" and "emergency response technicians" would be supervised by a registered nurse or higher level practitioner, who would specifically review information obtained on intake screening by "correctional medical technicians" and "emergency response technicians."

c. By November 14, 2013, defendants Cook County and Sheriff had failed to provide supervision by a registered nurse or higher level practitioner of the "correctional medical technicians" and "emergency response technicians" assigned to intake screening.

d. By November 14, 2013, defendants Cook County and Sheriff had failed to require that a registered nurse or higher level practitioner review information obtained on intake screening by "correctional medical technicians" and "emergency response technicians."

e. Another change defendants Cook County and Sheriff agreed to implement in the 2010 Consent Decree was to require that a registered nurse or higher level practitioner would, within two working days of booking at the Jail, perform a medical

assessment of any detainee who, like plaintiff's decedent, had a past history of seizures.

f. By November 14, 2013, defendants Cook County and Sheriff had failed to require that a registered nurse or higher level practitioner would, within two working days of booking at the Jail, perform a medical assessment of any detainee who, like plaintiff's decedent, had a past history of seizures.

g. At the time plaintiff's decedent entered the Jail in November of 2013, defendant Cook County had taken a variety of actions to cause the employment of an inadequate number of registered nurses or higher level practitioners at the Jail.

26. In November of 2013, it was obvious to defendants Cook County and Sheriff that detainees would die or suffer catastrophic injury because defendants had taken the acts described in paragraph 25 above.

27. In the evening of November 17, 2013, plaintiff's decedent complained to a correctional officer that he had vomited ten times following his lunch time meal.

28. In response to this complaint, a correctional officer escorted plaintiff's decedent to defendant Dunmars.

29.     Defendant Dunmars examined the electronic medical records maintained by defendant Cook County for plaintiff's decedent.

30.     The medical records examined by defendant Dunmars on November 17, 2013 showed that plaintiff's decedent was not receiving any medication for seizure disorder, as had previously been prescribed for him in August of 2008, October of 2009 and August of 2013.

31.     Defendant Dunmars acted in deliberate indifference to the fact that plaintiff's decedent had a seizure disorder and was not receiving any medication for that seizure disorder, as had previously been prescribed for him in August of 2008, October of 2009, and August of 2013, and turned a blind eye to the serious medical needs of plaintiff's decedent.

32.     Rather than take any action to provide plaintiff's decedent with the medication he required to avoid death, defendant Dunmars provided plaintiff's decedent with over-the-counter medication for an upset stomach.

33.     Shortly thereafter, plaintiff's decedent returned to his cell, where he suffered a seizure, fell to the floor, and died.

34.     As a result of the foregoing, plaintiff's decedent experienced great pain and suffering and was deprived of his life.

35.     Plaintiff demands trial by jury.

WHEREFORE plaintiff requests that judgment be entered against defendants for appropriate compensatory damages and that the costs of this action, including reasonable attorneys' fees, be taxed against defendants.

/s/  Kenneth N. Flaxman
KENNETH N. FLAXMAN
ARDC No. 830399
JOEL A. FLAXMAN
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200

*Attorneys for Plaintiff*